CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 0 6 2007

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 5:06CR00041 |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION** |
| CHARCEIL DAVIS KELLAM, ) | |
| Defendant. ) | By: Hon. Glen E. Conrad<br>United States District Judge |

This case is before the court on the defendant's motions for judgment of acquittal. The defendant's motions claim that there was not sufficient evidence to support the defendant's convictions and that the jury venire was not representative of a fair cross-section of the community. For the following reasons, the court will deny the defendant's motions.

## BACKGROUND

The defendant, Charceil Davis Kellam, was indicted by a grand jury on September 6, 2006. She was charged with: participating in a conspiracy to distribute 50 grams or more of cocaine base beginning no later than January of 2002 (Count One); one count of cocaine base distribution (Count Eight); and two substantive counts of possessing cocaine base with intent to distribute it (Counts Seventeen and Eighteen). Count Eight specifically identified codefendant Adelson Michel as being involved with Kellam in a particular sale of cocaine base.

On March 22, 2007, shortly before the trial of this case was set to begin, the government filed a motion to dismiss Count Eight of the indictment as to Michel. The government represented that subsequent investigation had revealed that Michel was not the same individual identified as "Cowboy"

who distributed the cocaine base as charged in Count Eight. On March 23, the court granted the government's motion, dismissing Count Eight with prejudice as to Michel.

The trial of Michel and Kellam had originally been set for March 22, 2007. Due to a motion to continue, the trial was moved to March 26. The jury pool drawn for March 22, 2007 was reconstituted. Nine additional jurors were added to the jury pool. The jury trial was held in Harrisonburg, Virginia, from March 26 to March 29. Kellam was convicted of Counts One, Eight, Seventeen, and Eighteen.

On April 13, 2007, the defendant filed two motions for judgment of acquittal. One motion challenges the sufficiency of the evidence to convict the defendant on Counts One, Eight, Seventeen, and Eighteen. The second motion challenges the jury venire, claiming that it did not represent a fair cross-section of the community. The government responded to the motions, and a hearing was held on July 27, 2007.

## DISCUSSION

### I. Sufficiency of the Evidence

Federal Rule of Criminal Procedure 29 provides that the court may enter a judgment of acquittal after a jury has returned a verdict against a defendant. Fed. R. Crim. P. 29. However, the court must uphold the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The United States Court of Appeals for the Fourth Circuit has defined "substantial evidence" as that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)). The court does not review witnesses'

2

credibility, assuming that the jury resolved contradictions in testimony in the government's favor. United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998).

A. Count One

The court's review of the evidence presented at trial leads it to conclude that there was substantial evidence to support the jury's verdict that the defendant conspired to manufacture, distribute, and possess with intent to distribute 50 grams or more of cocaine base, beginning on a date no later than January of 2002. To prove a conspiracy, the government must establish: (1) an agreement to distribute or possess with intent to distribute; (2) that the defendant knew of the conspiracy; and (3) that the defendant knowingly and voluntarily became part of the conspiracy. United States v. Wilson, 135 F.3d 291, 306 (4th Cir. 1998)(quoting Burgos, 94 F.3d at 857).

The court bases its conclusion that the jury's verdict is supported by substantial evidence on the testimony of three witnesses: Mannot Lusca, Sarah Johnson, and Martha Turner. At trial, Lusca testified that he knew Kellam from her presence on the "block" from where the conspiracy operated. Johnson was the confidential informant who made the controlled buy described in Count Eight. During the buy, Johnson wore a wire, and a tape recording of the buy was played for the jury. Johnson identified Kellam in open court as the female participant in the controlled buy. Johnson also testified that Kellam negotiated the purchase from the individual identified as "Cowboy" with Johnson. Kellam counted the money and participated in weighing the cocaine base. Johnson also identified a photograph of Cowboy. Turner testified as to the involvement in the conspiracy of both Michel and Cowboy, who participated in the conspiracy together even though they were competitors at times.[1]

---

[1] The court notes that there was some concern at trial as to whether the events described involved the single charged conspiracy or multiple conspiracies. The court instructed the jury on the possibility of multiple conspiracies. The jury was told that it should acquit the defendant if she was not found to be a member of the single conspiracy charged

Based on this evidence, the court concludes that a reasonable jury could find that there was an agreement to distribute cocaine base, that the defendant knew of the conspiracy, and that the defendant knowingly or voluntarily became a part of the conspiracy. Therefore, there was substantial evidence for the jury to find Kellam guilty beyond a reasonable doubt as to Count One.

B.  Count Eight

Count Eight alleged that on or about August 2, 2005, Michel and Kellam, "as principals and as aiders and abettors, knowingly and intentionally distributed approximately 57.8 grams of a mixture or substance containing a detectable amount of cocaine base ...." Before determining if the evidence was sufficient to support the jury's verdict, the court must consider the legal issue concerning the adequacy of the indictment in the prosecution of Kellam once the indictment was dismissed as to Michel.

The Fifth Amendment to the U.S. Constitution guarantees that a criminal defendant in federal court cannot be tried without an indictment returned by the grand jury. U.S. Const. amend V. ("[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...."). Therefore, only the grand jury may broaden or alter the charges in an indictment. United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999).

A defendant's Fifth Amendment rights are violated when a party other than the grand jury makes a "constructive amendment" to an indictment, "broaden[ing] the bases for conviction beyond

---

in the indictment. Whether the government has proved a single conspiracy or multiple conspiracies was a question for the jury. United States v. Roberts, 262 F.3d 286, 294 (4th Cir. 2001). The court concludes that the evidence at trial was such that a reasonable jury could have concluded that a single conspiracy existed from: (1) Turner's testimony linking Michel and Cowboy; (2) the transaction involving Kellam and Cowboy; and (3) Kellam's presence on the "block" from where the conspiracy operated. See, e.g., id. The Fourth Circuit has held that a single conspiracy can involve multiple transactions with an overlap of key actors, motives, and the same geographic area. United States v. Smith, 451 F.3d 209, 218 (4th Cir. 2006). Furthermore, a single conspiracy can involve competing dealers. United States v. Banks, 10 F.3d. 1044, 1051-54 (4th Cir. 1993).

4

those charged in the indictment." Id. This is regarded as a fatal variance, and error per se, because the defendant is convicted of a crime that was not charged by the grand jury in the indictment. Id. (citing United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991)). However, in certain situations, a variance between an indictment and the proof offered at trial does not constitute a constructive amendment because the nature of the crime is not altered. Id.

A variance is a fatal constructive amendment if the variance "either surprises the defendant at trial and hinders the preparation of his defense, or ... exposes him to the danger of a second prosecution for the same offense .... However, as long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." United States v. Redd, 161 F.3d 793, 795-96 (4th Cir. 1998) (internal quotations and citations omitted). These problems are not at issue if the alleged variance does not "affect an essential element of the offense." Id. at 796.

The court concludes that the government's dismissal of Count Eight as to Michel, due to the determination that Michel was not the "Cowboy" involved in the alleged drug transaction with Kellam, did not constitute a constructive amendment of the indictment as to Kellam. To prove Count Eight of the indictment, pursuant to 18 U.S.C. §§ 841(a) & (b)(1)(A), the government had to show: (1) distribution of approximately 57.8 grams of a mixture containing cocaine base; (2) knowledge of the distribution; and (3) intent to distribute the controlled substance. Randall, 171 F.3d at 209. The court notes that none of these elements would require an identification of Kellam's codefendant.

The Fourth Circuit has held that there was not a constructive amendment where an indictment charged the defendant under 18 U.S.C. § 2113(a)&(d) (bank robbery) and 18 U.S.C. § 924(c) (use of a firearm during a crime of violence), and proved the use of a firearm different than the firearm

5

described in the indictment. Redd, 161 F.3d at 795. In Redd, the indictment charged that the defendant used a "black revolver," but the evidence at trial showed that the defendant used a silver-colored handgun. Id. However, the Court concluded that the type of firearm used was not an essential element of the offense, and the defendant's Fifth Amendment rights were therefore not violated by the variance. Id. at 796-97. See also United States v. Robles-Vertiz, 155 F.3d 725 (5th Cir. 1998) (incorrect name of an alien in an indictment for transporting an alien to the United States, pursuant to 8 U.S.C. § 1324 (a)(1)(A)(ii), did not constitute a constructive amendment). By the same reasoning, the naming of Michel in the indictment did not implicate an essential element of the offense of distribution, and his dismissal would therefore not constitute a constructive amendment.

In fact, the situation in this case is very similar to that in United States v. Crayton, 357 F.3d 560 (6th Cir. 2004), in which the United States Court of Appeals for the Sixth Circuit found no fatal variance. In Crayton, Lawrence Crayton and Andre Alexander were both named in an indictment charging an attempt to possess cocaine with the intent to distribute it (Count Two) and possession of cocaine with the intent to distribute it (Count Three). Id. at 563. Alexander was acquitted at a jury trial, but the jury could not reach a verdict as to Crayton. Id. at 564. At his second trial, Crayton was convicted of both Counts Two and Three. Id. The language of Count Two stated that "... Crayton ... and ... Alexander, each aided and abetted by the other, did attempt to knowingly and intentionally possess with intent to distribute ... cocaine ...." Id. at 567. The same language was repeated in Count Three, with the "attempt" element omitted. Id. In his appeal, Crayton alleged that the government constructively amended the superceding indictment during the second trial by failing to remove Alexander's name and the "aiding and abetting language" from the indictment. Id. The Court, however, concluded that there was no constructive amendment of Crayton's indictment. Id. The Court

6

relied on an earlier decision involving a single trial where the defendant was found to have aided and abetted two individuals who were acquitted. Id. (citing United States v. Anderson, 76 F.3d 685, 689 (6th Cir. 1996)). In Anderson, the Court held that:

> The indictment gave defendant notice that he was being charged under count two both with being an aider and abettor and with the substantive crime of attempt. Indeed, the punctuation of the indictment sets off the "aided and abetted" phrase from the crime of attempt to possess cocaine with intent to distribute. The jury was entitled to find defendant guilty of the substantive crime of attempt even though his codefendants were found not guilty of attempt or aiding or abetting his attempt.

Anderson, 76 F.3d at 689. Based on this reasoning, the Court in Crayton held that there was no constructive amendment of the indictment based on the failure to remove the name of the acquitted codefendant. Crayton, 357 F.3d at 567.

The court concludes that the facts of the instant case are very similar to those in Crayton. As in Crayton, Kellam was on notice that she was being charged with both the substantive crime of distribution, as well as the crime of aiding and abetting her codefendant. In fact, the language of Kellam's indictment specifically stated that she was charged as a "principal," as well as an "aider and abettor." Therefore, even though her codefendant was dismissed from Count Eight, there was no constructive amendment.

Notably, the court finds this situation distinguishable from that in which a defendant is specifically charged with only "aiding and abetting." In United States v. Salinas, 654 F.2d 319 (5th Cir. Unit A Aug. 1981), the United States Court of Appeals for the Fifth Circuit held that an indictment was constructively amended when it alleged that the defendant had aided and abetted one bank officer, named in the indictment, in committing theft, but evidence showed that he had actually aided and abetted a bank officer not named in the indictment. Id. at 728. The Court noted that the

7

defendant was not charged with theft: "[t]he indictment said in effect that [the named officer] stole and that the appellant helped." Id. The Court concluded that because it was shown that the named officer did not steal, the defendant was convicted of a different crime than that for which he was charged. Id. As discussed above, however, Kellam was charged in this case as both a principal and as an aider and abettor. Therefore, the case is distinguishable because the name of Kellam's codefendant was not an essential element of the offense.

Because Kellam was charged as both a principal and as an aider and abettor, the court concludes that a change in the identification of her codefendant in the indictment did not constitute a constructive amendment. In reaching this conclusion, the court also returns to the two key considerations in deciding whether a variance is fatal. First, Kellam was not surprised at trial in a way that prevented preparation of her defense. See Redd, 161 F.3d at 795-96. In fact, Kellam knew that Michel had been dismissed from the indictment before her trial even began. Furthermore, the court notes that Kellam's defense presented at trial as to Count Eight, denying that the transaction taped on August 2, 2005 was a drug transaction, would not have been affected by the identification of a different codefendant. In addition, the court concludes that Kellam could not be exposed to the danger of prosecution for the same offense. Id. Kellam's charge resulted from an identifiable controlled buy, and the date and precise amount of cocaine base were specified in the indictment.[2]

Finally, the court notes that Count Eight was supported by substantial evidence. As described above, Sarah Johnson testified at trial as to Kellam's involvement in the controlled buy described in

---

[2] The court also notes that the use of Michel's name when describing this transaction as an overt act of the conspiracy in Count One is not significant because proof of an overt act is not required to sustain a conviction for a drug conspiracy. See United States v. Shabani, 513 U.S. 10, 15 (1994); United States v. Burns, 990 F.2d 1426, 1435 (4th Cir. 1993).

8

Count Eight. Johnson testified that she negotiated the purchase with Kellam, and that Kellam counted the money and helped to weigh the cocaine base. The court must assume that the jury found Johnson to be a credible witness. Romer, 148 F.3d at 364. Therefore, in light of Johnson's testimony and the evidence surrounding the transaction, the court concludes that the jury's finding that Kellam was guilty under Count Eight was supported by substantial evidence.

C. Counts Seventeen and Eighteen

The court also concludes that the evidence presented by the government as to Counts Seventeen and Eighteen was overwhelming, and the jury's verdict is supported by substantial evidence. Count Seventeen, which charged the defendant with possessing with the intent to distribute approximately 1.85 grams of a mixture containing cocaine base, and Count Eighteen, which charged the defendant with possessing with the intent to distribute approximately 12.2 grams of a mixture containing cocaine base, resulted from searches of the defendant and her vehicle. As the defendant's counsel admitted at trial, there is solid evidence as to these two counts that is hard to ignore.

However, the defendant contends that the evidence did not prove beyond a reasonable doubt that Kellam possessed the cocaine base with an intent to sell or distribute it. The elements of possession with intent to distribute are: (1) possession of the cocaine base; (2) knowledge of the possession; and (3) intent to distribute the cocaine base. Randall, 171 F.3d at 209. A finding of intent can be based on a number of factors, including quantity. United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005). At trial, the government adduced testimony that the quantities of cocaine base involved in each of Counts Seventeen and Eighteen are consistent with distribution. Viewing the evidence presented at trial in the light most favorable to the government, the court concludes that a reasonable jury could have found the defendant guilty of Counts Seventeen and Eighteen beyond a

9

reasonable doubt, finding that Kellam possessed the cocaine base found on both occasions with the intent to distribute it.

## II. Jury Venire

The defendant's second motion for judgment of acquittal claims that the jury venire was not representative of a fair cross section of the community.[3] The jury venire produced for the trial on March 26 included forty-five names; one of the forty-five people was an African-American.

Under the Sixth and Fourteenth Amendments, a defendant has a right to a jury venire that represents a fair cross section of the community. Duren v. Missouri, 439 U.S. 357, 358 (1979) (citing Taylor v. Louisiana, 419 U.S. 522 (1975)).[4] To establish a prima facie case that this right has been violated, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 364.

---

[3] As stated at the hearing of this matter in open court, the court concludes that the defendant did not waive this argument due to the timing of the challenge. Title 28, Section 1867 of the United States Code requires:
> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a). As the defendant did not know the nature of the revised jury list until March 26, 2007, the first challenge, raised on that day, was not untimely and the court can consider the merits of the defendant's challenge.

[4] This requirement is also codified in the Jury Selection and Service Act, 28 U.S.C. § 1861. 28 U.S.C. § 1861 ("[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes").

The defendant has not met the evidentiary requirements of this test; instead, she suggests that the 44:1 ratio of Caucasians to African-Americans in the jury venire represented a "per se unfair cross section of the community." In light of the Fourth Circuit precedent, however, the court concludes that this assertion is without merit. Although a defendant is entitled a jury venire composed of a fair cross section of the community, "systematic exclusion must be proven; it will not be presumed .... and the defendant has the burden of establishing it." United States v. Espinoza, 641 F.2d 153, 168 (4th Cir. 1981). Furthermore, the Court has recognized that "the Constitution does not require that the juror selection process be a statistical mirror of the community; it is sufficient that the selection be in terms of a fair cross-section gathered without active discrimination." United States v. Cecil, 836 F.2d 1431, 1445 (4th Cir. 1988) (internal quotations and citations omitted). The Court also recognized that merely showing statistical underrepresentation, without evidence of exclusionary or discriminatory practices, would be insufficient to establish a prima facie case. Id. at 1446.

Based on these principles, the court declines to create a "per se" exception to the requirements set forth by the Supreme Court of the United States in Duren. The court concludes that the defendant has failed to make out a prima facie case that African-Americans were a distinctive group in the community; that representation was not fair and reasonable in relation to the number of these persons in the community; and that underrepresentation resulted from systematic exclusion of the group. Therefore, the defendant's motion for judgment of acquittal will be denied.

11

## CONCLUSION

For the foregoing reasons, the defendant's motions for judgment of acquittal will be denied. The court concludes that there was sufficient evidence such that a rational jury could find that the defendant was guilty beyond a reasonable doubt on Counts One, Eight, Seventeen, and Eighteen. In addition, the court concludes that the defendant has not shown that the jury venire was not representative of a fair cross section of the community.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of August, 2007.

*/s/ Glen E. Conrad*
United States District Judge